UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 21-40-DLB-EBA

LOUELLA PAINTER                                                                               PLAINTIFF

v.                       **MEMORANDUM OPINION AND ORDER**

JOHN ALDEN LIFE INSURANCE CO.                          DEFENDANT

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

## I. INTRODUCTION

This matter is before the Court on a number of Motions related to Defendant's alleged improper denial of Plaintiff's long term care benefits. First, Plaintiff filed a Motion for Summary Judgment (Doc. # 20) and Defendant filed a cross-Motion for Summary Judgment. (Doc. # 24). Following the filing of both of these Motions, Plaintiff filed an Affidavit in support of her Response opposing Defendant's Motion for Summary Judgment. (Doc. # 30). In response to this filing, Plaintiff filed a Motion to Strike the Affidavit. (Doc. # 32). The Motions have been fully briefed, (Docs. # 25, 27, 28, 31, 33, and 34), and are now ripe for the Court's review. For the reasons set forth herein, Defendant's Motion for Summary Judgment is **granted** (Doc. # 24), Plaintiff's Motion for Summary Judgment is **denied** (Doc. # 20), and Defendant's Motion to Strike is **denied**. (Doc. # 32).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Louella Painter filed the instant action in this Court asserting improper denial of insurance benefits. (Doc. # 1-1). Specifically, Painter alleges that Defendant

1

John Alden Life Insurance Co. ("John Alden") failed to honor the benefits owed to her under her long-term care policy ("the Policy").  (*Id.* ¶¶ 5, 8, 11, 16).

In January of 1998, Defendant issued Plaintiff a long-term care insurance policy which provided Plaintiff lifetime benefits related to long-term nursing care.  (*Id.* ¶ 5).  The Policy provided a lifetime daily benefit of $100 if Plaintiff required long-term nursing care, subject to the Policy's terms.  (*Id.* at 15).  Over twenty years later, in March of 2020, Plaintiff was admitted to The Seasons at Alexandria ("the Seasons").  (*Id.* ¶¶ 1, 6).  Plaintiff and the Seasons submitted claims for benefits to John Alden, which were denied on July 14, 2020 and August 12, 2020.  (*Id.* ¶ 8).  Plaintiff alleges that she had performed her obligations under the Policy by continually paying premiums while the Policy has been in effect, but Defendant breached its obligations under the Policy.  (*Id.* ¶¶ 14-16).  Namely, Defendant allegedly failed to pay the owed daily long-term care benefits and did not waive the premium as required after Plaintiff was admitted to the Seasons.  (*Id.* ¶ 16).  Plaintiff requests that the Court enter judgment requiring Defendant to pay her benefits under the Policy and a declaratory judgment from the Court asserting that the Policy provides coverage for Plaintiff's stay at the Seasons.  (*Id.* at 5).

### III. ANALYSIS

#### A. Defendant's Motion to Strike Plaintiff's "Untimely" Affidavit of Paula Unrau

##### 1. *Standard of Review*

The Federal Rules of Civil Procedure only contemplate a Motion to Strike in the context of the pleading stage of litigation.  See *Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966).  Rule 12(f) provides an avenue for the Court, on a motion from the party or its own motion, to "strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  This rule "does not make provision for testing the legal sufficiency of affidavits." *Reed v. City of Memphis, Tenn.*, 735 F. App'x 192, 197 (6th Cir. 2018) (quoting *Wimberly*, 364 F.2d 227).  Instead, "courts should generally consider a motion to strike an affidavit as a matter of the 'admissibility of the evidence offered in the affidavit, and the competency of the affiant to testify to the matters stated therein.'" *Id.*

### 2. Discussion

Defendant moves to strike the Affidavit of Paula Unrau (Doc. # 30), which was filed by Plaintiff seven days after Plaintiff's Response Opposing Defendant's Motion for Summary Judgment and Reply in Support of her own Motion for Summary Judgment (Docs. # 27 and 28).  (Doc. # 32).  Paula Unrau is Plaintiff's daughter and primary non-medical caregiver.  (Doc. # 30 at 1).  A document is attached to the Affidavit which clarifies that the Seasons had a full-time Registered Nurse on staff down the hall from the Personal Care section in the Skilled and Intermediate sections, *see infra* III.B.2.b.  (*Id.* at 7).

Defendant contends that the Affidavit violated Local Rule 7.1(c) which outlines briefing deadlines in the Eastern District of Kentucky.  (Doc. # 32 at 2).  Local Rule 7.1(c) specifically states:

> **Time for Filing Responses and Replies.**  Unless otherwise ordered by the Court, a party opposing a motion must file a response within 21 days of service of the motion.  Failure to timely respond to a motion may be grounds for granting the motion.  A party may file a reply within 14 days of service of the response.

As noted above, instead of filing Unrau's Affidavit with her Response or Reply, Plaintiff filed it a week later.  However, Defendant's Motion for Summary Judgment was filed on January 20, 2022.  (Doc. # 24).  Therefore, Plaintiff had until February 10, 2022 to file a Response to Defendant's Summary Judgment Motion.  At first blush, it appears that

3

Plaintiff's filing of the Affidavit was in fact timely under the local rules.

However, Defendant further argues that Sixth Circuit precedent requires affidavits to be filed with the brief, not after a brief is filed.  (Doc. # 32 at 2) (citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002)).  In *Peters*, the Court explained that Federal Rule of Procedure 6, which provides that an affidavit supporting a motion should be served with that motion, "is designed to prevent the moving party from springing new facts on the nonmoving party 'when it is too late for that party to contest them.'"  285 F.3d at 476 (quoting *Republic Bank Dallas v. First Wis. Nat'l Bank of Milwaukee*, 736 F. Supp. 1470, 1472 (E.D. Wis. 1986)).  This issue is not present in the current controversy.  Plaintiff filed the Affidavit along with her Response to Defendant's Motion for Summary Judgment, and before Defendant filed its Reply brief.  The very nature of a response allows for a reply brief—therefore giving the moving party the opportunity to contest any arguments raised in the response.  Here, Defendant's Reply acknowledged the Affidavit, and had the opportunity to rebut the information contained within the Affidavit.  (Doc. # 31 at 8-9).

Even if the Court were to determine that Plaintiff's filing of the Unrau Affidavit was untimely, it is still within the Court's discretion to consider the Affidavit nonetheless.  While the Court undoubtedly may "refuse [to consider] the filing of untimely affidavits," it also may exercise its discretion to evaluate untimely affidavits.  *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1446 (6th Cir. 1993).  This serves the interests of justice because "decisions on the merits should not be avoided on the basis of 'mere technicalities.'"  *Id.*  (quoting *Foman v. Davis*, 371 U.S. 178, 181 (1962); *see also Jackson v. Tenn. Valley Auth.*, 595 F.2d 1120, 1121 (6th Cir. 1979) (quoting *Foman*, 371 U.S. at

4

181-82) (noting that it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities . . . the Rules . . . are to be construed to secure the just, speedy, and inexpensive determination of every action."). As discussed below, *see infra* Section III.B.2, the issue of whether a Registered Nurse is on staff is dispositive to whether Plaintiff is entitled to long-term care benefits. The Court finds that striking this evidence on a mere technicality would not serve the interests of justice. Therefore, the Court finds that Plaintiff's filing of the Affidavit was both timely and proper.

Next, Defendant contends that the Affidavit is inadmissible hearsay and therefore cannot be considered by this Court. (Doc. # 32 at 4-5). An inquiry into the admissibility of an affidavit at the summary judgment stage is guided by Federal Rule of Civil Procedure 56. *See Reed*, 735 F. App'x at 197. Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Defendant argues that the Affidavit contains hearsay evidence in violation of Rule 56(c)(4). (Doc. # 32 at 4).

Within the Sixth Circuit, "it is well established that a court may not consider hearsay when deciding a summary judgment motion." *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012). However, the Sixth Circuit has clarified that "some forms of hearsay evidence," such as affidavits, may be considered in deciding a summary judgment motion, so long as the evidence would be admissible at trial. *Id.* Simply put, "proffered evidence need not be in admissible *form*, but its *content* must be admissible." *Bailey v. Floyd Cnty. Bd. of Ed.*, 106 F.3d 135, 145 (6th Cir. 1997). For example, inadmissible deposition testimony

5

may "assist a plaintiff in surviving a motion for summary judgment . . . provided substituted oral testimony would be admissible . . . ." *Id.*

While the Court finds that Defendant has made a colorable hearsay argument, it remains the case that the Affidavit's content would likely be admissible at trial. As explained by the Sixth Circuit, "proffered evidence need not be in admissible *form*, but its *content* must be admissible." *Bailey*, 106 F.3d at 145. For the letter specifically, the Court assumes that Plaintiff could establish that the evidence is admissible at trial through two potential avenues—Federal Rule of Evidence 803(6)'s business records exception or by simply calling the author of the letter to testify, thereby avoiding any hearsay issues entirely. Therefore, Defendant's Motion to Strike (Doc. # 72) is **denied**.

**B. Summary Judgment Motions**

*1. Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)). In deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party,

6

summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

### 2. Breach of Contract Claim

The crux of this dispute is whether Defendant John Alden breached its contract with Plaintiff by refusing to pay out benefits under Plaintiff's long-term care insurance policy. Plaintiff asserts that Defendant "does not dispute the fact that Plaintiff has met most of the requirements necessary to obtain [long-term care] Benefits." (Doc. # 20 at 5). Plaintiff contends that Defendant only disputes whether Plaintiff is receiving care in a qualified long-term care facility, as defined by the Policy. (*Id*). Defendant argues otherwise—not only does Defendant argue that the Seasons does not qualify as a "Long Term Care Facility" as defined by the Policy, but also argues that Plaintiff is not entitled to benefits because she no longer qualifies as a "Chronically Ill Individual." (Doc. # 24 at 13 and 21).

In the context of insurance claims, Kentucky law provides that "[i]nterpretation and construction of an insurance contract is a matter of law for the court." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). Therefore, the interpretation of an insurance contract "is appropriately determined through summary judgment when there are no other factual issues in dispute." *McFerrin v. Allstate Prop. & Cas. Co.*, 29 F.Supp.3d 924, 929 (E.D. Ky. 2014). "[T]erms in insurance contracts do not have any technical legal meaning and must be interpreted as a lay consumer would understand the policy." *Davis v. Progressive Direct Ins. Co.*, 626 S.W.3d 518, 520-21 (Ky. 2021). If a term is ambiguous, and "two reasonable interpretations exist, the interpretation favoring the insured prevails." *Id.* at 521. However, this "certainly does not

mean that every doubt must be resolved against [the insurance company] and it does not interfere with the rule that the policy must receive a reasonable interpretation consistent with . . . the plain meaning and/or language in the contract." *Ky. Ass'n of Cntys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (6th Cir. 2005) (quoting *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994)).

Defendant argues that at least two of the five requirements for the Seasons to be considered a Long Term Care Facility are not met. (Doc. # 24 at 13-18). Namely, that the Seasons is not primarily engaged in providing professional nursing care and does not provide 24-hour per day nursing care under a Registered Nurse. (*Id.*). Plaintiff argues that the Seasons does in fact meet these requirements, particularly when the Policy is read in conjunction with the Endorsement attached to the Policy. (Doc. # 20 at 6).

### a. The Seasons provides professional nursing care as defined by the Policy's terms

The Policy defines Long Term Nursing Care as "Qualified Long Term Care Services performed in a Long Term Care Facility." (Doc. # 1-1 at 18). In turn, a Long Term Care Facility is defined as a place which:

> 1. is primarily engaged in providing professional nursing care and related services on an impatient basis and is licensed under state law to perform the services it is providing; and 2. Is a separate facility or a distinct part of another health facility; and 3. Is under the supervision of a physician; and 4. Provides 24-hour per day nursing care under the supervision of an R.N.; and 5. Maintains a daily record on each patient.

(*Id.*). The Endorsement of the Policy further bolsters the definition of Long Term Nursing Care—"Skilled, intermediate and custodial nursing care consists of inpatient nursing care provided on an extended and continuous basis or as needed, as well as supportive care and *personal care services*." (Doc. # 20 at 6) (emphasis added); (Doc. # 1 at 25).

The first element required to be considered a Long Term Care Facility is two-fold. The facility must be "engaged in providing professional nursing care" and be "licensed under state law to perform the services." (Doc. # 1-1 at 18). Dr. Robert Long, the CEO of the Seasons, testified about the Seasons' care and licensing. First, he noted that the Seasons operates as "one campus, one building," and provides both "licensed nursing care" and "licensed personal care." (Doc. # 24-2 at 6). Dr. Long was asked if he agreed that "the personal care facility at the Seasons of Alexandria is not primarily engaged in providing professional nursing care." (*Id.* at 11). In response, he stated that "it depends on how broad you want to define nursing care." (*Id.*). Dr. Long later agreed that the Seasons is not allowed to provide professional nursing care to residents of the personal care facility. (*Id.* at 19).

The parties disagree with the construction of the term "professional nursing care." Defendant argues that Dr. Long's statement agreeing that the Seasons may not provide professional nursing care is dispositive. (Doc. # 24 at 14). Plaintiff alternatively argues that, in the Endorsement, Defendant "expanded the definition of 'long term nursing care' to include '*personal care services*.'" (Doc. # 28 at 7). Plaintiff correctly points out that the term "professional nursing care" is undefined in the Policy. (*Id.* at 8). Notwithstanding Dr. Long's conflicting statements regarding whether the Seasons provides "professional nursing care," the Policy language controls.

Here, it appears that Plaintiff's interpretation of the Policy language is plausible. The Policy provides that the facility must be engaged in "providing professional nursing care." (Doc. # 1-1 at 18). "Long Term Nursing Care" is simply defined as "Qualified Long Term Care Services performed in a Long Term Care Facility." (*Id.*). That definition is

9

further expanded by the Policy Endorsement which defines Long Term Nursing Care as including personal care services. (*Id.* at 18, 25). Further, the Policy defines "Qualified Long Term Care Services" to include "personal care services which are required by a Chronically Ill Individual and are provided pursuant to a plan of care prescribed by a Licensed Health Care Practitioner." (*Id.* at 19). When taking into account the Policy provisions as a whole, it is apparent that personal care services are inextricably intertwined with long term care services or long term nursing care. Unfortunately for Defendant, in Kentucky, "[i]f two reasonable interpretations exist, the interpretation favoring the insured prevails." *Davis*, 626 S.W.3d at 521.

As for part two of the first requirement, the license conferred to the Seasons by Kentucky's Cabinet for Health and Family Services classifies the Seasons as a Personal Care Home—thereby meeting the requirement that the facility be licensed to provide the care it is providing to residents. (Doc. # 24-1 at 75). Therefore, this Court finds that the Seasons meets the first element required for it to be considered a Long Term Care Facility.

### b. The Seasons does not employ a Registered Nurse 24/7

As mentioned in the discussion surrounding Defendant's Motion to Strike, Unrau's Affidavit included exhibits bearing on whether the Seasons employs a Registered Nurse. Under the Policy's express terms, to be considered a Long Term Care Facility the facility must "[p]rovide[] 24-hour per day nursing care under the supervision of an R.N." (Doc. # 1-1 at 18).

In the original Long Term Care Facility Questionnaire, provided by Defendant, and filled out by the Director of the Seasons Shanon Sandy, Ms. Sandy stated that zero Registered Nurses were on staff in the Seasons' personal care section. (Doc. # 30 at 4).

This form was dated April 28, 2020.  (*Id.*).  The following exhibit, a letter from Ms. Sandy to Defendant, states that the Seasons staffs a Licensed Practical Nurse 24/7, but it is "not required by the state to have an RN on duty for the Personal Care section."  (*Id.* at 7). "[T]here are RNs down the hall in the Skilled and Intermediate areas.  We staff a nurse supervisor, med techs, pcas.  Staff work 24/7 assisting our residents."  (*Id.*).  This is in line with Dr. Long's testimony that the facility has two licenses, one for personal care and one for long-term care even though they are located in the same facility.  (Doc. # 24-2 at 6).  Sixty-six beds at the Seasons are classified as personal care beds, while 167 beds are licensed as nursing care beds.  (*Id.*).  Dr. Long required the Seasons' Human Resource Director to produce a list of employees employed by the personal care section from January 1, 2015 trough November 7, 2021.  (*Id.* at 7).  According to that list, no Registered Nurses were on staff for the personal care facility at the Seasons during that period.  (*Id.* at 31-34).  On January 19, 2021, the Seasons, through its Finance Manager, Tomika Brindley, sent an updated Long Term Care Facility Questionnaire, which once again stated that there were no Registered Nurses on staff in the Seasons' personal care section.  (Doc. # 24-1 at 59-61).  On March 18, 2021, Ms. Brindley "revised [the] form to show correct nursing hours," which is identical to the January 19, 2021 form, except for one Registered Nurse is listed on the form instead of zero and that nurse is listed as working one, eight-hour shift per day.  (*Id.* at 72-74).

Unlike the question of whether the Seasons provides professional nursing care, this Policy term is not subject to other interpretations.  The Policy term explicitly requires that the facility provides 24 hour/day nursing care under the supervision of a Registered Nurse.  (Doc. # 1-1 at 18).  Plaintiff has argued that according to Dr. Long's testimony,

11

"the Seasons now has an RN on staff and was previously under the supervision of a[] RN when Plaintiff began residing there." (Doc. # 27 at 8-9). However, the records produced by the Seasons conclusively establish that there is no Registered Nurse in the personal care unit who is providing or supervising 24-hour care for the residents. Even Ms. Sandy's letter supports this conclusion—she wrote that Licensed Practical Nurses are staffed in the personal care unit 24 hours a day, but Registered Nurses are not assigned to the personal care section, and instead are assigned to the skilled and intermediate sections. (Doc. # 30 at 7). Even assuming, based on the most recent Long Term Care Facility Questionnaire, that there is a Registered Nurse on staff in the personal care section, that nurse only works one, eight-hour shift per day. (Doc. # 24-1 at 73). Therefore, the personal care section of the Seasons does not employ a Registered Nurse who provides 24-hour care for the residents or supervision. Consequently, the Seasons does not meet the definition of Long Term Care Facility under Plaintiff's Policy and Plaintiff is therefore not entitled to benefits.[1]

### 3. *Declaratory Judgment*

Declaratory Judgment is not appropriate because the Court has determined that Plaintiff is not entitled to benefits under the Policy.

---

[1] Though Defendant further argues that Plaintiff no longer qualifies as a "Chronically Ill Individual," it is not necessary for the Court to determine whether Plaintiff is "Chronically Ill" under the terms of the Policy because she is not entitled to benefits due to her residence at the Seasons' personal care section. (Doc. # 24 at 21).

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)  Defendant's Motion to Strike (Doc. # 32) is **DENIED**;

(2)  Plaintiff's Motion for Summary Judgment (Doc. # 20) is **DENIED**;

(3)  Defendant's Motion for Summary Judgment (Doc. # 24) is **GRANTED**; and

(4)  Judgment in favor of Defendant shall be filed contemporaneously herewith.

This 27th day of May, 2022.



Signed By:
David L. Bunning
United States District Judge

O:\DATA\ORDERS\Cov2021\21-40 MOO.docx